IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-HC-2135-FL

| | | |
|---|---|---|
| CHRISTOPHER D. CROMARTIE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TODD ISHEE, Secretary, North Carolina | ) | |
| Department of Adult Correction, | ) | |
| | ) | |
| Respondent.[1] | ) | |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the court on respondent's motion for summary judgment (DE 22) pursuant to Federal Rule of Civil Procedure 56. Petitioner responded in opposition and in this posture the issues raised are ripe for ruling. For the reasons stated below, the motion is granted.

## STATEMENT OF THE CASE

Petitioner is serving criminal sentence in the custody of the North Carolina Department of Adult Correction, and in the instant habeas petition he challenges disciplinary infraction for refusing to obey an order. Petitioner alleges correctional officials violated his due process rights under the Fourteenth Amendment to the United States Constitution during the disciplinary

---

[1] The court constructively amends the case caption to reflect that Todd Ishee is the proper respondent in this action. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (stating the respondent in a habeas corpus action is the custodian of the correctional facility where respondent is incarcerated); (Resp. (DE 21) at 1 n.1 (noting that Ishee is the correct respondent)); see also Fed. R. Civ. P. 25(d) (permitting automatic substitution of the proper official in these circumstances).

proceedings. In particular, petitioner alleges that correctional officials denied his requests for witnesses, favorable documentary evidence, and staff assistance, and that the evidence was insufficient to convict him. As relief, petitioner requests, inter alia, restoration of sentencing credits and vacatur of his disciplinary conviction.

Following a period of initial review pursuant to Rule 4 of the Rules Governing 28 U.S.C. § 2254 cases, the court permitted petitioner to proceed with his due process claims asserted in amended petition filed August 16, 2023. Respondent promptly filed the instant motion for summary judgment, arguing that petitioner's due process claims fail on the merits. In support, respondent relies on memorandum of law, statement of material facts, and appendix of exhibits thereto, comprised of records from petitioner's disciplinary proceedings. Petitioner responded in opposition, relying on memorandum of law and the same exhibits filed by respondent.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to petitioner. On February 16, 2023, petitioner was working as an inmate janitor at the Pender Correctional Institution ("Pender C.I."). (Am. Pet. (DE 8)[2] at 17–18; Resp't App. Ex. 1 (DE 24-1) at 4 (showing incident occurred at the Pender Correctional facility)).[3] As part of their janitorial work, petitioner and another inmate secured permission from officer Eason ("Eason") to go to the "clotheshouse" to obtain clean towels. (Am. Pet. (DE 8) at 17–18).

Petitioner and his co-worker left their housing dorm and proceeded to the facility gym on

---

[2] Petitioner provides sworn verification of the facts set forth in the amended petition, rendering the petition an opposing affidavit for purposes of summary judgment. (DE 8 at 27); see Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

[3] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

2

the north yard, where they passed through the first gate in front of the gym. (Id. at 18). As they progressed through the second gate adjacent to the gym, officer Amanda White-Ruiz ("Ruiz") approached them and asked where they were going. (Id. at 18). Petitioner explained that he was going to the clotheshouse to exchange towels, and suggested that Ruiz call Eason because he approved their trip to the clotheshouse. (Id.). Ruiz refused to call Eason and informed petitioner that he must obtain permission to leave his housing dorm. (Id.). Petitioner responded that Pender C.I. "management" had placed memorandum in his dorm stating that janitors must obtain clean towels from the clotheshouse between 8:00 and 8:30 am every Thursday. (Id.). Nonetheless, Ruiz directed petitioner and his co-worker to return to their dorm and secure permission from officers there to go to the clotheshouse. (Id.). Ruiz refused to wait for petitioner at the gate while he obtained the required permissions. (Id.).

According to petitioner, he began walking back toward his dorm at this point. (Id. at 18–19). As he proceeded to the dorm, he encountered officer Willing, who holds the rank of captain and has authority to override Ruiz's orders. (Id. at 19). Petitioner explained the situation to Willing, who confirmed with Eason that petitioner had permission to go to the clotheshouse, and Willing then proceeded to unlock the gates allowing petitioner to complete the towel exchange. (Id.).

The following day, petitioner was directed to report to the operations building for a meeting with sergeant Wargo ("Wargo"). (See id. at 20; Resp't App. Ex. 1 (DE 24-1) at 20 (indicating the meeting with Wargo occurred on February 17)). Wargo informed petitioner that he was assigned to investigate the disciplinary charge for disobeying an order based on the incident with Ruiz. (Am. Pet. (DE 8) at 20–21). During this meeting, respondent signed a

3

"notice to offender" document that explained his rights in the disciplinary process, including the following:

    1) 24-hour advance written notice of the charges;

    2) to make verbal or written statements to the investigating officer;

    3) to request that the investigating officer obtain witness statements or gather other evidence, and to request that witnesses be present at the disciplinary hearing;

    4) to request that a staff member provide assistance;

    5) to have the evidence against petitioner read to him, and to explain or refute such evidence at the disciplinary hearing; and

    6) his rights to administrative appeal.

(Resp't App. Ex. 1 (DE 24-1) at 20). The notice also provided that petitioner may "waive these rights . . . by overt refusal to cooperate with the established disciplinary procedures." (Id.).

In addition, respondent completed "statement by witness" form in which he provided his version of the incident and requested statements from various staff member witnesses, including Eason, Willing, Captain Hankins ("Hankins") and officer Beutler ("Beutler"). (Id. at 21). As to the latter two staff members, petitioner stated that they could confirm his assertion that janitors must obtain new towels every Thursday between 8:00 and 8:30 a.m. (See id.; see also Am. Pet. (DE 8) at 21). The form also included space for petitioner to request live witnesses at his hearing. (Resp't App. Ex. 1 (DE 24-1) at 21). Although petitioner checked "yes" on this box, he also wrote that he requested live witnesses "if no [written] statement can . . . be provided." (Id.). Finally, petitioner requested staff assistance from "any staff available" and the memorandum regarding the janitorial towels. (Id.).

Upon completion of the investigation, officer Christopher Martin drafted the offense and disciplinary report, in which he determined that the "B25 charge" for disobeying an order was appropriate. (Id. at 8). At this stage, petitioner pleaded "no plea" to the charge and the disciplinary package was forwarded to the disciplinary hearing officer. (Id.).

Petitioner's hearing was held March 15, 2023. (Id. at 10). During the hearing, petitioner asked the disciplinary hearing officer ("DHO") if she would provide staff assistance as he requested in his witness statement. (Am. Pet. (DE 8) at 21). The DHO stated that petitioner could use correctional officer K. Harris for assistance or he can proceed without staff assistance. (Id. at 22). Petitioner requested a different staff member from the programs staff but the DHO denied this request. (Id.).[4] Petitioner then asked the DHO whether she had all the evidence discussed in his witness statement, whether she had the memorandum stating towel exchange occurs every Thursday between 8:00 and 8:30 a.m., and whether the infraction could be dismissed. (Id.). The DHO responded as follows:

> I would not be here if I did not collect and/or gather the evidence, wasting my or your time of course I have the memo and all the written statements and no, I will not counsel, dismiss, and/or suspend such infraction[] due to your infraction history. Now if you plea[d] not guilty I will find you guilty and if you plea[d] guilty I will in fact bargain with you on restrictions.

(Id.).

Petitioner pleaded not guilty and the DHO stated, "according to the witness statements you requested you still do not get the point and you are in fact guilty, do you have a verbal statement?" (Id. at 23). In response, petitioner asked "where is the memo and what did [officer]

---

[4] Notably, petitioner states that he requested assistance from a member of "programs staff" on his witness statement form, but this is contradicted by the form itself. (Compare Resp't App. Ex. 1 at 21 (requesting assistance from "any staff available") with Am. Pet. (DE 8) at 22).

Beutler say about the memo?" (Id.). The DHO did not respond to this question but she stated she was finding petitioner guilty and that the punishment would be determined at a later date. (Id.). Ultimately, the DHO activated suspended sanctions for two unrelated infractions and combined these with the punishment for the instant infraction. (See id. at 23–24). Petitioner was punished as follows: 1) 50 days in solitary confinement; 2) fine of $10 for the infraction; 3) perform extra duty; 4) loss of visiting, commissary, and recreation privileges for 60 to 120 days; and 5) loss of an unspecified amount of merit, gain, and good time credit. (Id.). Petitioner further asserts that this infraction was the "second leading factor" in correctional officials' decision to demote him to "close" custody level. (Id. at 24).

The DHO's written decision also is relevant to petitioner's claims.[5] As recounted in the "record of [disciplinary] hearing," the DHO wrote:

> Based on the reporting party['s] statement obtained from case manager Ruiz stating on [February 16, 2023,] she was at the north yard gym gate letting the vocational classes through the gate. Offender Christopher Cromartie . . . came out of the gate with a bag of [what] looked like towels. [Ruiz] asked offender Cromartie where he was going and he stated the warehouse. She told him to return back to his dorm because he was not called out. Offender Cromartie [became] argumentative and stated he goes every day at the same time[.] [Ruiz] told him to return to his dorm. Offender Cromartie went back to the North Yard and the gate was secured. Offender [Cromartie] was seen walking down the [sidewalk] towards A-dorm instead of going back into C-dorm as instructed. Sgt. notified. Offender charged with a B25 offense [disobey an order].
> . . .
> Following the reading of the summary of evidence, offender was explained his disciplinary and appeal rights. Offender [pleaded] not guilty to the B25 offense.
> . . .
> Offender Cromartie requested written statements from clotheshouse Ms. Beutler and all persons mentioned [in his written statement of the incident]. Offender checked yes [on his witness statement] to live witnesses if no [written] statement can . . . be provided. Offender checked yes to physical evidence and wrote [that he is requesting] memo of dirty janitorial towels. Offender checked yes to staff

---
[5] As discussed below, in this procedural posture the court will adopt petitioner's version of the facts to the extent there is conflict between the DHO's written decision and petitioner's version in the amended petition.

6

assistance and wrote any staff available. Offender declined [staff assistance] at hearing when this was offered to him; unable to document [this] due to restraints.
. . .
Offender Cromartie submitted a written statement: "I am the hallway janitor I was leaving C-dorm heading to the clotheshouse to exchange my dirty towels I clean with. Per Capt. Hankins (special [operations]) we incarcerated people can only turn in our janitorial towels once a week. I did not leave the dorm without informing the dorm officer who[] in fact was behind the [officer] desk[.] [Hankins asked,] "Cromartie where are you headed to?" I responded, "clotheshouse towels." The officer stated, "10-4" and followed me to the gate and entered wing 1 making last call for school. I never left the dorm unannounced or without the officers['] knowledge. I in fact later was let out by captain Willing in which he called and confirmed on the radio my movement. Therefore, I had not only permission from my dorm officer Captain Willing called the clotheshouse and confirmed such movement. . . . Please include statements from all persons (staff) mentioned [throughout] this statement."
. . .
A statement was obtained from Capt. Willing . . . . Offender states [captain Willing] let offender Cromartie out, confirmed it on the radio and called the clothes house. [Captain Willing responds in his statement,] ["]at no time did [I] do any of those things.["]
. . .
A statement was obtained from [officer] Eason [in which he states] he does not recall the specifics of [this incident, including] whether or not he gave offender Cromartie permission to leave the dorm to go to the clotheshouse.
. . .
A statement was obtained from [officer] Beutler [in which she states] she did place a memo in the dorms stating janitor rags are to be exchanged on Thursdays. Offenders bring the dirty rags and towels to exchange for cleans ones.
. . .
A rebuttal statement was obtained from [officer] Ruiz [in which she states] offender was told she would not let him out [of] the gate due to [not] having notice from the dorm officer that he was leaving, offender was argumentative and was given a direct order to return to the dorm. Offender ignored the order and began walking towards A-dorm.
. . .
A statement was obtained from Capt. Hankins stating at no time has he ever informed offender Cromartie incarcerated people can only turn in their janitorial towels once per week.
. . .
A copy of the memo mentioned by offender Cromartie could not be obtained as there is no posted memo in the dorms and no record of it on file.
. . .
During the hearing, offender's verbal statement was consistent with his written

statement.

. . .

As offender's request for live witnesses did not specify any persons and written statements were obtained from those mentioned in his statement and included in the record of hearing, his request has been satisfied in the disciplinary process. Any live witness statements would lack relevance and only provide duplication of previously provided testimony.

. . .

Based on reporting party's statement and investigating officer's report, the offender is found guilty of the B25 offense. Offender was given a direct order to return to his dorm by the case manager at the gate. He did not immediately comply and was given another order to return to his dorm by the reporting party. Offender Cromartie walked away but did not go to his dorm, instead walked towards another dorm in the opposite direction of his assigned area. Any prior instructions regarding the daily scheduled activities for his assigned job were not to override a direct order by a staff member.

. . .

Offender . . . was provided a copy of the record of hearing, sanctions and appeal form.

(Resp't App. Ex. 1 (DE 24-1) at 10–12).

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue [requiring evidentiary hearing]." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 586–87 (1986).[6]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue [requiring evidentiary hearing]." Id. at 249. In determining whether there is a genuine issue requiring evidentiary hearing, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

---

[6] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). However, in the event the petitioner did not bring his claims in state court, and respondent does not assert procedural defenses on the basis thereof, the court reviews the claim de novo. Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021); Valentino v. Clarke, 972 F.3d 560, 576 (4th Cir. 2020); see also Scruggs v. Jordan, 485 F.3d 934, 938 (7th Cir. 2007) (explaining "a prison disciplinary board is not a court" for purposes of § 2254(d), and thus de novo review applies if the claim is not pursued in state court and no procedural defenses are asserted).[7]

B.   Analysis

The Due Process Clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of a protected liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557–58 (1974). Under the Wolff standard, an inmate is entitled to the following: 1) written notice of the charges at least 24 hours in advance of the hearing; 2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and 3) the right to call witnesses and present documentary

---

[7]   Notably, the court's conclusions herein would be the same under either de novo or § 2254(d) review.

10

Case 5:23-hc-02135-FL   Document 31   Filed 02/26/25   Page 10 of 16

evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564–66; see also Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019). The disciplinary board also must provide staff assistance if the inmate is illiterate or the issues raised are complex. Wolff, 418 U.S. at 570.

Decisions by a disciplinary board pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Federal courts will not review the accuracy of the board's fact finding de novo or for clear error, and determining whether the standard is satisfied does not require examination of the entire record or weighing of evidence. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "[a]s long as the record is 'not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary,' courts need not grant . . . relief on this ground." Tyler v. Hooks, 945 F.3d 159, 170 (4th Cir. 2019) (quoting Hill, 472 U.S. at 457). Finally, the disciplinary decision must be made by an impartial adjudicator. Wolff, 418 U.S. at 570–71.

Here, the record establishes that petitioner received 24 hours' notice of the charges and a written statement by the DHO explaining the evidence relied on and the reasons for finding him guilty of the infraction. (See Resp't App. Ex. 1 (DE 24-1) at 20–21 (showing that petitioner signed the notice of rights form and provided his witness statement February 17, 2023, approximately one month before the hearing); id. at 10–12 (documenting that written decision was sent to petitioner)). Petitioner does not argue or provide competent evidence suggesting correctional officials failed to comply with these requirements.

11

As to the right to call witnesses, petitioner requested live witnesses only if written statements could not be obtained from his requested witnesses. (Id. at 21). Where the DHO obtained the requested written statements, she complied with petitioner's request. (Compare id. (requesting written statements from individuals mentioned in petitioner's statement) with id. at 11, 22–26 (showing written statements were obtained from each desired witness)). Moreover, in his detailed account of the hearing, petitioner does not state that he explicitly requested live witnesses during the hearing. (Am. Pet. (DE 8) at 21–24). In the absence of specific request for live witness testimony, the DHO did not violate petitioner's qualified right to call witnesses. See Lennear, 937 F.3d at 279 (requiring that inmate make explicit, timely request for video evidence in order to give rise to due process right to review such evidence).

Petitioner also argues that he was not afforded the right to obtain favorable documentary evidence where correctional staff did not provide the memorandum stating that janitorial towels must be exchanged between 8:00 and 8:30 a.m. on Thursdays. But officials searched for this document and could not find it. (See Resp't App. Ex. 1 (DE 24-1) at 11 ("A copy of the memo mentioned by [petitioner] could not be obtained as there is no posted memo in the dorms and no record of it on file.")). Petitioner does not contest respondent's showing on this point, and correctional officials cannot be required to produce documents that do not exist in their records. See Lennear, 937 F.3d at 275–76.

Moreover, Beutler confirmed that she placed a memo in the dorms stating the towels/rags must be exchanged on Thursday. (Id.). As a result, the DHO was aware that a memo similar to the one described by petitioner was placed in the dorm, and she found respondent guilty notwithstanding that evidence. (See id. at 12). As the DHO explained, "any prior instructions

12

regarding the daily scheduled activities for his assigned job were not to override a direct order by a staff member." (Id.). Accordingly, production of the memo would not have aided petitioner's defense, and any error is harmless. See Lennear, 937 F.3d at 277.

Turning next to petitioner's request for staff assistance, petitioner is not illiterate and he fails to show that his claims are so complex as to require staff assistance. See Wolff, 418 U.S. at 570. Indeed, the disciplinary proceedings in essence came down to whether petitioner complied with Ruiz's order to return to the dorm, which is not an overly complex disciplinary issue. In addition, and in the alternative, petitioner was offered staff assistance at hearing and he declined, stating that he wanted a different staff member. (Am. Pet. (DE 8) at 21–22). Petitioner is not entitled to assistance from staff member of his own choosing during disciplinary proceedings. See Wolff, 418 U.S. at 570.

Petitioner next claims that he is actually innocent of the disciplinary infraction. To the extent this is a challenge to the sufficiency of the evidence, the claim is without merit. Ruiz stated that she gave petitioner a direct order to return to C-dorm, and he instead walked to a different dorm. (Resp't App. Ex. 1 (DE 24-1) at 11, 25). The DHO obtained witness statements from all individuals requested by petitioner, and none of them confirmed petitioner's account that he walked toward C-dorm after Ruiz gave him the order. (Id. at 11, 22–26). The DHO is not required to believe petitioner's version of the facts, and Ruiz's statement satisfies the "some evidence" standard. See Hill, 472 U.S. at 457; Tyler, 945 F.3d at 170; Baker, 904 F.2d at 932 (noting courts will not re-weigh the evidence relied upon by the DHO).

In his response brief, petitioner asserts several new claims that are not part of his petition, including that additional witnesses should have been called to support his version of the incident,

13

that he should have been afforded the opportunity to view video surveillance evidence, and that his appeal package did not include instructions for mailing the appeal to the correct correctional officials. (DE 29 at 3–6, 8). As a threshold issue, petitioner cannot amend his petition by asserting new claims for the first time in response to respondent's motion for summary judgment. See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). And even if petitioner could overcome this procedural hurdle, he points to no evidence in the record suggesting he requested additional witnesses or video evidence before or during the disciplinary hearing. See Lennear, 937 F.3d at 279 (requiring timely request for video or other documentary evidence). Petitioner cannot request additional witnesses or video evidence for the first time his federal habeas petition. See id. As to lack of mailing instructions for his administrative appeal, there is no constitutional due process right to such instructions. See Wolff, 418 U.S. at 557–48, 564–70; Lennear, 937 F.3d at 268; Tyler, 945 F.3d at 170.

Petitioner also brings several claims unrelated to his due process rights during the hearing, arguing the punishment was excessive, that he was removed from his prison job as a result of the infraction, and that he was demoted to close custody. (See Am. Pet. (DE 8) at 24). These claims, however, are irrelevant to the issue of whether petitioner was afforded his due process rights during the hearing, and they do not form an independent basis for habeas relief. See Wolff, 418 U.S. at 557–48, 564–70; Lennear, 937 F.3d at 268; Tyler, 945 F.3d at 170; see also Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be . . . released before the expiration of a valid

sentence."); Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (stating inmates do not have a constitutional right to placement in a particular correctional facility or custody level); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) ("The classifications and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators."); Johnson v. Knable, No. 88-7729, 1988 WL 119136, at *1 (4th Cir. Oct. 31, 1988) (explaining "denial of [prison] employment does not, in and of itself, abridge any constitutional right of the inmate").

To extent petitioner argues that his placement in solitary confinement was excessive, he fails to provide any supporting facts for this claim. See Sandin v. Conner, 515 U.S. 472, 486 (1995) (placement in disciplinary segregation for 30 days did not present atypical and significant hardship in relation to the ordinary incidents of prison life as required to establish due process violation); Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir.1992) (explaining conclusory habeas claims should be dismissed summarily), abrogated on other grounds as recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Finally, petitioner cannot challenge his conditions of confinement under § 2254. See Wilborn v. Mansukhani, 795 F. App'x 157, 163 (4th Cir. 2019); Hallinan v. Scarantino, 466 F. Supp. 3d 587, 601–04 (E.D.N.C. 2020).

In sum, petitioner fails to establish a genuine dispute of fact as to his due process claims, and respondent is entitled to judgment as a matter of law as to these claims. Any remaining claims are procedurally barred or fail on the merits for the reasons explained above.

C.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse

15

to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

Based on the foregoing, respondent's motion for summary judgment (DE 22) is GRANTED. The petition is DISMISSED with prejudice, and a certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of February, 2025.

LOUISE W. FLANAGAN
United States District Judge

16

Case 5:23-hc-02135-FL Document 31 Filed 02/26/25 Page 16 of 16